UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


CHERYL E. LANDER,　　　　　　　　　　　　CASE NO. 1:08-CV-00823
　　　PLAINTIFF　　　　　　　　　　　　　　　(DLOTT, J.)
　　　　　　　　　　　　　　　　　　　　　　　(HOGAN, M.J.)
VS.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,
　　　DEFENDANT


## REPORT AND RECOMMENDATION

Plaintiff filed her application for disability insurance benefits (DIB) in June, 2003. She alleged an onset date of January 17, 2003. Plaintiff's application was denied, both initially and upon reconsideration. Plaintiff then requested and obtained a hearing before an Administrative Law Judge (ALJ) at Cincinnati, Ohio on August 2, 2006. At the hearing, Plaintiff, who was represented by counsel, testified as did Vocational Expert (VE), William Cody. Following an unfavorable decision in January, 2007, Plaintiff processed an appeal to the Appeals Council, who refused review in September, 2008. Plaintiff then filed her Complaint with this Court in November, 2008, and sought judicial review of the final order of the Defendant Commissioner denying her benefits.

## STATEMENTS OF ERROR

Plaintiff asserts that the ALJ erred in several respects. She first argues that the ALJ erred in his evaluation of medical source opinion by failing to give controlling weight to the opinions of treating physicians, Dr. Kahn, Dr. Strayer and Dr. Jobalia. Plaintiff next argues that the ALJ erred in evaluating her credibility and subjective reports of pain. Finally, Plaintiff contends that the ALJ erred in relying on the responses to improper hypothetical questions to the VE.

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff was 42 years old at the time of her date last insured (June 30, 2003), and she is thus considered a "younger individual" for purposes of resolving her DIB claim. *See* 20 C.F.R. §404.1563(c), *see also* Tr. 60. Plaintiff has a high school education, plus two years of college. *See* 20 C.F.R. § 404.1564(b)(4), *see also* Tr. 98. Her past relevant work includes senior internal auditor, a finance coordinator, a finance director/CFO, a secretary, and an accounting assistant. (Tr. 79; 106-07).

Plaintiff testified at the administrative hearing that she lives with her husband and adult daughter. She was helping to unpack their belongings at the time of the hearing as she and her family had just moved. Plaintiff testified that she can unpack three boxes before her hands start to hurt on "good days." On "bad days," she stays in bed.

As to her activities of daily living, she cooks breakfast. She rests in a recliner and watches TV. She tried to do things with her church. Plaintiff described pain in her neck, arms, hands, and she has numbness and tingling in her left foot. She states that her pain is constant, but is aggravated by exertion. She had joined a pain support group. She takes a number of medications which relieve some of her symptoms, but do not eliminate them. She claims that the side effects of the medication include sleepiness and lack energy. (Tr. 1066-85).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ's hypothetical question to the VE assumed an individual who has the residual functional capacity to lift, carry, push and pull 10 lbs. occasionally and 5 lbs. frequently, can stand and/or walk for a total of 2 hours in an 8 hour day. The individual has no limitation on sitting. The individual can occasionally bend, kneel, crouch and balance. The hypothetical individual cannot crawl or climb ladders, ropes or scaffolds, but can occasionally climb stairs or ramps. The hypothetical individual should not work around hazards such as unprotected heights or unguarded moving machinery, and cannot work in an area exposed to vibration. Lastly, the

2

hypothetical individual is limited to occasional reaching, handling and fingering bilaterally. The VE responded that a hypothetical individual of Plaintiff's age, education, work history, and the above residual functional capacity would be able to perform Plaintiff's past relevant work as an auditor, CFO and finance coordinator, as they are customarily performed in the local and national economies.

A second hypothetical involving frequent handling, reaching and fingering would eliminate all past employment. A third hypothetical further limiting the individual to repetitive reaching, handling and fingering no more than 10% of the workday also would eliminate all competitive employment. The VE further testified that his testimony is consistent with the Dictionary of occupational Titles (DOT). (Tr. 1085-89).

## THE ADMINISTRATIVE LAW JUDGE DECISION

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff met the insured-status requirement for DIB eligibility through June 30, 2003. (Tr. 20, 26). The ALJ also found that Plaintiff had not engaged in substantial gainful activity since January 17, 2003, the alleged disability onset date. (Tr. 26).

The ALJ found that Plaintiff has the severe impairment of degenerative disc disease. Id. However, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or equal the level of severity described in Appendix 1, Subpart P, Regulations No. 4. Id. The ALJ concluded that Plaintiff has residual functional capacity to perform a limited range of sedentary work[1] with the following restrictions:

> Due to her degenerative disc disease of the cervical spine that is status-post fusion surgery, she is limited to exerting up to 10 pounds of force occasionally and five pounds frequently to lift, carry, push, or pull items. She can stand and walk two hours in an eight-hour workday, and can sit for eight hours. She can stoop,

---

[1] The Regulations define sedentary work as "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §416.967(a).

3

balance, crouch, kneel, and climb ramps and stairs occasionally. However, due to
continuing pain in her arms and shoulders, she should not crawl, climb ladders,
ropes, or scaffolds, nor should she work in areas which expose her to vibration.
For the same reason, she is limited to reaching, handling, and fingering
occasionally. Due to side effects of pain medication, she should not work around
hazards such as unprotected heights or unguarded moving machinery.

Id. The ALJ further found that Plaintiff is able to perform her past relevant work. (Tr. 27). For this reason, the ALJ found that Plaintiff was not under a disability and thus not eligible for DIB.

## MEDICAL RECORD

Plaintiff injured her neck as a result of a motor vehicle accident in October 2000. (Tr. 180). An MRI of Plaintiff's cervical spine taken in February 2001 revealed mild discogenic spurring and bulge or protrusion with mild canal and foraminal narrowing bilaterally at C5-6, C6-7, and centrally at C4-5. (Tr. 156). The MRI also showed a reversal of the cervical spinal curvature that may relate to muscle spasm, and there was early degenerative or reactive end place signal alternation at C5-6. Id. An EMG taken in October 2001 revealed no electrodiagnostic evidence of radiculopathy (C5-T1), plexopathy, ulnar neuropathy, or carpal tunnel syndrome. (Tr. 909-10). An X-ray of Plaintiff's cervical spine performed in December 2001 showed degenerative changes with no evidence of fracture. (Tr. 161). An X-ray of her thoracic spine was negative. (Tr. 163).

Plaintiff related a second motor vehicle accident occurring in December 2001. (Tr. 192). A cervical MRI performed in October 2002 revealed no significant changes from the February 2001 MRI. (Tr. 155). An MRI of the thoracic spine performed in November 2002 was normal. (Tr. 152).

Plaintiff first saw Alfred Kahn, M.D., F.A.C.S. in December 2002. (Tr. 180-81). Examination revealed a limited range of motion on extremes due to pain. Id. She had a negative Spurling's test. Id. She had a C6 sensory deficit to the left, and seemed to have full grade weakness on the left with both triceps and biceps, as well as intrinsics of the hand. Id. Dr. Kahn diagnosed Plaintiff with degenerative disc disease at C5-6 and C6-7 with left C7 radiculopathy, which was a worsening of a pre-existing condition secondary to a motor vehicle accident. Id.

4

On January 3, 2003, Franceine S. Patter, a physician assistant for Plaintiff's family practice physician, Michael G. Lawley, D.O., reported that Plaintiff had decided to undergo a decompression surgery of her neck with Dr. Kahn. (Tr. 139). On January 17, 2003, Dr. Kahn performed an anterior spinal decompression with vertebrectomy and fusion, using a right iliac bone graft. (Tr. 177-78, 201-03).

Plaintiff underwent rehabilitation at The Christ Hospital from January 21-31, 2003, after she was noted to have a left hemiparesis, during her postoperative course. (Tr. 190). A physical examination revealed marked weakness in Plaintiff's left arm. (Tr. 191). By January 25, 2003, four days after her admission, Plaintiff's transfers required only minimal assistance. Id. By January 27, 2003, Plaintiff started working on cooking and other advanced activities of daily living (ADLs). Id. By January 29, 2003, Plaintiff needed only minimal assistance and the hospital discharged her home to continue physical therapy and occupational therapy as an outpatient. Id.

When Plaintiff saw Dr. Kahn for follow-up in March 2003, she had "improved dramatically with regards to her strength, although she still definitely had dysesthesias, worse to the left than the right." (Tr. 175). She had a little clumsiness when walking as well. Id. Her fusions were healing well. Id. In May 2003, Plaintiff reported her neck felt great. (Tr. 174). She had gotten about all of her strength back, although she was a little weak in her leg and she stumbled occasionally. Id.

On May 2, 2003, Plaintiff completed her course of physical therapy with a good result. (Tr. 225). Julie Novotny, the physical therapist, reported that there now existed only slight strength differences in Plaintiff's extremities and that she was now able to continue her gym program. Id. She was using a splint on her left hand at night, which gave her great relief. She had no significant complaints of cervical pain. Id.

Plaintiff initially saw pain specialists, Neil Jobalia, M.D. on July 14, 2003. Plaintiff's chief complaint was bilateral arm pain. Dr. Jobalia reported that, although Plaintiff had recovered well from her surgery and the subsequent neurological symptoms, she still complained of persistent neuropathic pain in her upper extremities and arms. On examination of the upper extremities, there was some patchy sensory loss; however, there was dermatomal loss in the C8

5

distribution bilaterally. There was a loss of sensation on the right side from T4-10. The left triceps strength was 3/5, and it was 4/5 in the rest of the left upper extremity and in the right upper extremity. There was no dermatomal loss of sensation in the lower extremities, nor was there any muscle loss. Dr. Jobalia diagnosed neuropathic pain secondary to a spinal cord edema following surgery. (Tr. 841)

On July 18, 2003, Plaintiff saw Jonathan R. Strayer, M.D., a physical medicine and rehabilitation specialist, who noted that, since her discharge, Plaintiff's problems had been those of weakness, spasticity, and pain involving her upper limbs. Functionally, Plaintiff was independent with her self-care with the exception of managing her hair due to difficulty reaching the top of her head. Plaintiff was otherwise independent with her mobility and she was able to drive. She reported increased pain at night, but was able to sleep. Dr. Strayer noted that Plaintiff was presently on medical leave from her job and that she thought she would be on leave through October 2003. Dr. Strayer observed that Plaintiff was quite comfortable during the examination as she did not show any signs of obvious distress. Dr. Strayer considered the possibility that Plaintiff would be left with a degree of left upper limb weakness, spasticity, and pain. (Tr. 322-35).

On July 29, 2003, Dr. Kahn stated that although he did not do disability ratings, Plaintiff does have a permanent impairment due to her cervical spine injury and subsequent surgery. He further reported that plaintiff would be restricted in some activities, like no heavy lifting, or repetitive bending, twisting, or overhead activities. (Tr. 888).

When Plaintiff was evaluated for her Physical Therapy program in August 2003, it was noted she "appears with discrepancies at evaluation", stating that Plaintiff was walking 2-3 miles, two or three times each week and swimming two times each week, 20-25 laps. (Tr. 318).

On August 25, 2003, E.S. Villanueva, M.D., state agency reviewing physician reported that Plaintiff could lift up to twenty pounds occasionally and ten pounds more frequently. She could sit, as well as stand and walk, for about six hours in an eight-hour day. Dr. Villanueva noted that Plaintiff still had some weakness and loss of sensation in her left arm. (Tr. 341-45).

Plaintiff continued to follow up with Dr. Kahn. On December 17, 2003, Dr. Kahn noted that although Plaintiff was improving in some respects, she was still having trouble in other

6

areas. Plaintiff reported that the medication Klonopin helped her nerve pain dramatically, but she also reported that taking it made her extremely tired, especially if she was active at all with her walking. (Tr. 881). On February 11, 2004, Plaintiff expressed frustration with her pain medications and asked if she could have a consultation with a different pain manager. Id. Dr. Kahn noted she was taking a trip to Maui and he stated that he was encouraging her with regard to the trip and with regard to her attempts to return to work. Id. On March 17, 2004, Dr. Kahn reported that Plaintiff was considering returning to work if she could tolerate it. (Tr. 880). Dr. Kahn recommended that, initially, Plaintiff should return on a part-time basis, working two or three days each week. Id. On May 20, 2004, Dr. Kahn reported that Plaintiff had returned to work for half days, three days each week. Dr. Kahn stated that there was no question that Plaintiff did better when she was not working, observing that, in the latter instance, she "actually has some days that she feels pretty good all things being equal." Dr. Kahn noted that Plaintiff also experienced "bad days" and commented that everyday that she worked constituted a problem for her. (Tr. 1017).

In March 2004, Dr. Strayer, opined that Plaintiff should attempt to return to work as a medical auditor for University Hospital, although she should lift less than 25 pounds, should not stand for long, may have difficulty typing, should start work on a part-time basis at first, and may need brief breaks. (Tr. 930-31).

In October 2004, Plaintiff received a cervical epidural steroid injection from Dr. Jobalia. (Tr. 828-29). On October 22, 2004, an EMG of Plaintiff's ulnar and median nerves revealed evidence for a left ulnar neuropathy as well as evidence for a chronic, remote C7 radiculopathy, with no acute denervation identified. (Tr. 866).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are

7

supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix I. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.,* 708 F.2d

1048 (6th Cir. 1983); *Kirk* v. *Secretary of H.H.S.,* 667 F.2d 524 (6th Cir. 1981), *cert. denied, 461* U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.,* 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen,* No. 876189, slip op. at 4 (6th Cir. Oct. 28, 1988). An impairment will be considered non severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,*773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler,* 771 F.2d 966 (6th Cir. 1985).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born* v. *Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch* v. *Richardson,* 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon* v. *Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321,

9

323 (6th Cir. 1978). *See also Richardson* v. *Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir, 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323. *See also Cole* v. *Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir. 1987).

When the grid is not applicable, the Commissioner must make more than a generalized finding that work is available in the national economy; there must be "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs." *Richardson* v. *Secretary of H.H.S.,* 735 F.2d 962, 964 (6th Cir. 1984) (per curiam) (emphasis in original); *O'Banner* v. *Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978). Taking notice of job availability and requirements is disfavored. *Kirk* v. *Secretary of H.H.S.,* 667 F.2d 524, 536-37 n.7, 540 n.9 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). There must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *Richardson,* 735 F.2d at 964; *Kirk,* 667 F.2d at 536-37 n.7. The Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only through specific proof of plaintiff's individual capacity, as well as proof of the requirements of the relevant jobs. *Phillips* v. *Harris,* 488 F. Supp. 1161 (W.D. Va. 1980)(citing *Taylor v. Weinberger,* 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a vocational expert is required to show the availability of jobs that plaintiff can perform. *Born v. Secretary of H.H.S.,* 923 F.2d 1168, 1174 (6th Cir. 1990); *Varley* v. *Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987).

The assumptions contained in an ALJ's hypothetical question to a vocational expert must be supported by some evidence in the record. *Hardaway* v. *Secretary of H.H.S.,* 823 F.2d 922, 927-28 (6th Cir. 1987). A proper hypothetical question should accurately describe plaintiff "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky* v. *Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). *See also Varley* v. *Secretary of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987). Where the evidence supports plaintiff's allegations of pain, a response

10

to a hypothetical question that omits any consideration of plaintiff's pain and its effects is of "little if any evidentiary value." *Nos v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of H.H.S.*, 39 F.3d 115, 118 (6th Cir. 1994).

The regulations expressly provide that the responsibility for deciding a claimant's residual functional capacity rests with the Administrative Law Judge when cases are decided at an administrative hearing. *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004)(citations omitted). [20 C.F.R. § 404.1546; § 404.1527(e)(2)].

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.,* 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require ... 'objective evidence of the pain itself.'" *Duncan,* 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky,* 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler,* 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must

articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky, 35* F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst* v. *Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

## OPINION

The pertinent period of time at issue concerns Plaintiff's work abilities and limitations between January 17, 2003 until June 30, 2003. (Tr. 60-66). Plaintiff must establish that the onset of disability occurred prior to the expiration of insured status under the Act. *Moon v. Sullivan,* 923 F.2d 1175, 1182 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984); *Gibson v. Secretary of H.E.W.*, 678 F.2d 653 (6th Cir. 1982). Post insured status evidence of new developments in plaintiff's condition is generally not relevant. *Bagby v. Harris*, 650 F.2d 836 (6th Cir.), *cert. denied sub nom.*, *Bagby v. Schweiker*, 454 U.S. 1087 (1981); *see also .Strong v. Social Sec. Admin.*, 88 Fed. Appx. 841, 845 (6th Cir. 2005)("Evidence of disability obtained after the expiration of insured status is generally of little probative value."). However, such evidence may be examined when it establishes that the impairment existed continuously and in the same degree from the date plaintiff's insured status terminated. *See Johnson v. Secretary of H.E.W.*, 679 F.2d 605 (6th Cir. 1982); *Henry v. Gardner*, 381 F.2d 191 (6th Cir.), *cert. denied*, 389 U.S. 993 (1967), *reh'g denied*, 389 U.S. 1060 (1968); *see also Higgs v. Bowen*, 888 F.2d 860, 863 (6th Cir. 1988)("Evidence of medical condition after insurance cutoff must be considered to the extent it illuminates claimant's health before that date")(citing *Martonik v. Heckler*, 773 F.2d 236, 240-41 (8th Cir. 1985)).

Plaintiff argues the ALJ improperly rejected and failed to give the most weight to

12

Plaintiff's treating physicians, Dr. Kahn, Dr. Strayer and Dr. Jobalia. Dr. Kahn, Plaintiff's surgeon, opined that Plaintiff would be restricted in activities such as no heavy lifting, no repetitive bending, twisting, or overhead activities. (Tr. 888). The ALJ noted, "[t]hese restrictions, although somewhat vague, are consistent with the objective medical evidence in file and the findings of the undersigned. This opinion is given significant weight." (Tr. 23-24). Plaintiff argues this opinion cannot be used as part of the ALJ's RFC assessment because it is incomplete. As the Commissioner noted in this case, the ALJ primarily considered evidence that would help him to determine whether or not Plaintiff was disabled prior to June 30, 2003. Therefore, the ALJ reasonably relied on a report that Dr. Kahn submitted on July 29, 2003. We agree.

Dr. Kahn further opined in April 2004, after the date last insured of June 30, 2003, that Plaintiff can return to work. (Tr. 879). Plaintiff argues that Dr. Kahn recommended 4 hours a day at 3 days a week and that this does not constitute substantial gainful activity. What Plaintiff fails to note is Dr. Kahn stated, "[i]deally, she should try to work four hours a day for perhaps three days a week." (Tr. 879). However, Dr. Kahn continued to state that "[t]he idea would be that she would build up endurance over time so that she could get back to more normal work activities." Id. The ALJ gave Dr. Kahn's April 2004 opinion "some weight." (Tr. 24).

The ALJ also gave Dr. Strayer's March 2004 opinion "some weight." (Tr. 24). As noted above, Dr. Strayer restricted Plaintiff to lift less than 25 pounds, stating that she should not stand for long, may have difficulty typing, should start work on a part-time basis at first, and may need brief breaks. (Tr. 930-31).

In assessing Dr. Jobalia's opinion, The ALJ noted:

> Lesser weight is given to the opinion of Neil Jobalia, M.D. His opinion from December 2004 is the one farthest past the date last insured of June 30, 2003. He opined that the claimant is totally and permanently disabled, which is an opinion inconsistent with the opinions of treating physicians Kahn and Strayer. It is also inconsistent with the claimant's walking and swimming in August 2003 discussed above.

(Tr. 24).

Plaintiff has not established that the ALJ erred as a matter of law in weighing these

13

medical source opinions or that substantial evidence did not support the opinions of these medical sources. *See, e.g., Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir.2004). Without such a showing, the Court is not free to re-weigh the medical source opinions or to resolve other evidentiary conflicts. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)("there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference.")(quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *see also Her v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir.1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

There is no evidence that any physician placed work-related restrictions on Plaintiff greater than those set forth in the ALJ's RFC assessment for any twelve-month time period between Plaintiff's alleged onset date and Plaintiff's date of last insured (June 30, 2003). The lack of physical restrictions by a physician is evidence supporting a finding of non-disability for this period. *See Maher v. Secretary of Health and Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989)(per curiam)(citing *Nunn v. Bowen,* 828 F.2d 1140, 1145 (6th Cir.1987)). The substantial evidence of record does not show Plaintiff suffered from a disabling condition for a twelve month period prior to June 30, 2003.

Plaintiff next argues that the ALJ mis-evaluated her credibility and subjective reports of pain. However, Plaintiff's testimony regarding her pain is not supported by evidence concerning her pain levels before her date last insured. Instead, the record contains substantial evidence supporting the ALJ's credibility findings. In assessing Plaintiff's subjective allegations of pain, the ALJ stated that:

> The claimant testified that she lives with her husband and 25-year old daughter. She was helping to unpack their belongings at the time of the hearing. She and her family had just moved. She, testified that she can unpack three boxes before her hands start to hurt. She cooks breakfast. She rests in a recliner and watches TV. The pain is in her neck, arms, hands, and she has numbness and tingling in her left foot. She pain is constant, but is aggravated by exertion. The claimant stated in July 2003 that her pain dropped from 8 to 4 on a scale of 1-10, with 10 being the highest level of pain. She takes a number of medications. They relieve some of her symptoms, but do not eliminate them. She testified in August 2006

14

> that they make her sleepy and lack energy as side effects, although she stated in
> August 2003, shortly after the date last insured of June 30, 2003, that the
> medications had no side effects. She has undergone surgery and physical therapy.
> She tries to avoid exerting herself as much as possible in order to alleviate her
> pain. The claimant's credibility is supported by her good work history .
>
> However, Plaintiff is not entirely credible. It was noted in June 2003 that her
> fusion was consolidating, and it was recommended that she exercise. She was
> discharged from the Drake Center on May 2, 2003, with no significant cervical
> pain and only occasional cramps. She was walking 2-3 miles a day 2-3 times a
> week and was swimming 20-25 laps twice a week as of August 12, 2003. Exhibit
> 17F shows that her pain was generally improving with pain treatment. The
> claimant showed no pain behaviors or expressions at the hearing. She gestured
> easily with her hands and arms and rose easily from a sitting position with no
> indication of pain.
>
> The claimant's impairments have clearly had a significant impact on her
> functioning, but it seems apparent that the claimant has exaggerated that impact.
> However, some of her subjective allegations are credible, and the credible
> portions are reflected in the residual functional capacity shown below. The
> residual functional capacity completed by the undersigned gives the claimant, the
> benefit of the doubt whenever possible regarding her subjective allegations.

(Tr. 24-25).

In light of the substantial evidence supporting the ALJ's conclusion with respect to Plaintiff's subjective allegations of pain, we find that the ALJ's credibility determinations are entitled to deference. *See Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).

Plaintiff's third Statement of Error criticizes the ALJ for failing to include functional limitations in his hypothetical questions accommodating the number of days of work she would miss and the side-effects of her medications. Plaintiff argues that the hypothetical questions also failed to include problems using her hands and arms to reach, handle and finger. The ALJ's hypothetical question to the VE assumed an individual who has the residual functional capacity to lift, carry, push and pull 10 lbs. occasionally and 5 lbs. frequently, can stand and/or walk for a total of 2 hours in an 8 hour day. The individual has no limitation on sitting. The individual can occasionally bend, kneel, crouch and balance. The hypothetical individual cannot crawl or climb ladders, ropes or scaffolds, but can occasionally climb stairs or ramps. The hypothetical

15

individual should not work around hazards such as unprotected heights or unguarded moving machinery, and cannot work in an area exposed to vibration. Lastly, the hypothetical individual is limited to occasional reaching, handling and fingering bilaterally. These limitations, as noted above, are consistent with the opinions of Plaintiff's treating physicians, Drs. Kahn and Strayer. We find that the ALJ accommodated and accurately describe Plaintiff to the VE and committed no error in that respect. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994); *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ, therefore, properly relied on the VE's testimony in concluding that she could perform her past relevant work.

For the above reasons, the Court concludes that the ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT**

The decision of the Commissioner be **AFFIRMED** and this case be **DISMISSED** from the docket of this Court.

Date: 4/5/10

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS REPORT & RECOMMENDATION

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).